UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Muhammad Abdurrahman,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Mark Dayton, in his official capacity as Governor of the State of Minnesota, Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, and Steve Simon, in his official capacity as Secretary of State for the State of Minnesota,<br><br>　　　　Defendants. | Court File No.: |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### PRELIMINARY STATEMENT

1. This case presents the question of whether the State of Minnesota may command an Elector of President and Vice President of the United States to vote for particular candidates under Article II of the United States Constitution. Additionally, it presents the question of whether the executives can ignore and refuse to count the votes or ballots of an Elector after they have already been cast.

2. Plaintiff Muhammad Abdurrahman was appointed as an Elector by the State of Minnesota for the presidential election in 2016. On December 19, 2016, during the meeting of Electors in which they vote for President and Vice President, Mr. Abdurrahman

1

gave his presidential and vice-presidential vote for Bernie Sanders and Tulsi Gabbard, respectively.

3.     Because Mr. Abdurrahman's vote was inconsistent his pledge under Minn. Stat. § 208.43 to "to mark [his] ballots for president and vice president for the nominees for those offices of the party that nominated [him]," Steve Simon, Secretary of State of Minnesota, did not accept or count his ballots pursuant to Minn. Stat. § 208.46. Not only this, but Secretary Simon also deemed Mr. Abdurrahman to have vacated his position as Elector under the same statutory regime.

4.     These statutes and the "Uniform Faithful Presidential Electors Act" that they fall under thus unconstitutionally abrogated Mr. Abdurrahman's power and right to vote as an Elector for the presidential and vice-presidential candidates of his choosing.

5.     And if the Uniform Faithful Presidential Electors Act is not unconstitutional, what would prevent the State of Minnesota from forcing future Electors to pledge and vote for only Democrats, or Republicans, or the Governor of Minnesota, regardless of what the popular vote may be?

**PARTIES**

6.     Plaintiff Muhammad Abdurrahman is an individual person and an Elector of President and Vice President of the United States, appointed by the State of Minnesota pursuant to the United States Constitution. Mr. Abdurrahman is a resident of Minneapolis, Minnesota.

7.     Defendant Mark Dayton is the Governor of the State of Minnesota. In his capacity as Governor, he is responsible for faithfully executing the laws of Minnesota

under Article V, section 3 of the Constitution of the State of Minnesota. Upon information and belief, Governor Dayton is a resident of St. Paul, Minnesota.

8.  Defendant Lori Swanson is the Attorney General of the State of Minnesota. In her capacity as Attorney General, she is responsible for enforcing the laws of Minnesota under Minn. Stat. § 8.01. Upon information and belief, Ms. Swanson is a resident of Eagan, Minnesota.

9.  Defendant Steve Simon is the Secretary of State of the State of Minnesota. In his capacity as Secretary of State, he is responsible for presiding over the meeting and vote of the Minnesota-appointed Electors in which they cast their ballots for President and Vice President, accepting Elector ballots as cast, counting the ballots and votes, and preparing a certificate of vote reflecting the votes of Electors. *See* Minn. Stat. §§ 208.45, 208.46, 208.47; *see also* 3 U.S.C. §§ 7-11. Upon information and belief, Secretary Simon is a resident of St. Louis Park, Minnesota.

## JURISDICTION & VENUE

10. This Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.

11. This Court has jurisdiction over Plaintiff's claim for declaratory relief under 28 U.S.C. § 2201 and 28 U.S.C. § 1331.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because all Defendants reside in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

13.     Pursuant to Article II, section 1 of the United States Constitution, "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector."

14.     Additionally under Article II, section 1, "The Congress may determine the Time of choosing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States."

15.     Pursuant to Amendment XII of the United States Constitution, each Elector shall vote by ballot for President and Vice-President of the United States.

16.     Pursuant to its Constitutional power to determine the time of choosing the Electors, Congress has designated that Electors "shall be appointed, in each state, on the Tuesday after the first Monday in November, in every fourth year succeeding every election of a President and Vice-President." 3 U.S.C. § 1; *see also* Minn. Stat. § 208.02 ("Presidential electors shall be chosen at the state general election held in the year preceding the expiration of the term of the president of the United States.")

17.     In the event that a State has enacted laws "for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State," that controversy or contest must be determined at least six days prior to the time fixed for the meeting of the Electors in which each casts his or her ballot for the President and Vice-President. 3 U.S.C. § 5.

18. Pursuant to its Constitutional power to determine the day on which the Electors shall give their votes, Congress has designated the time for Electors to meet and cast their ballots as "the first Monday after the second Wednesday in December next following their appointment." 3 U.S.C. § 7.

19. In calendar year 2016, pursuant to 3 U.S.C. § 1, Congress required each State to appoint its Electors on November 8.

20. In calendar year 2016, pursuant to 3 U.S.C. § 5, Congress required each State to make a final determination of any controversy or contest concerning its appointment by December 13, 2016.

21. In calendar year 2016, pursuant to 3 U.S.C. § 7, Congress required the Electors to meet and give their votes for President and Vice-President of the United States on December 19, 2016.

22. Accordingly, pursuant to 3 U.S.C. §§ 1 and 5, each State must have appointed its Electors by November 8, 2016 and have finally resolved any controversy or contest concerning its prior appointments of any and all Electors by December 13, 2016.

23. Under Minnesota's Elector-appointment process, political parties may nominate an Elector and an Alternate Elector for each Elector position in the State. Minn. Stat. § 208.42. The names of each party's nominees must be certified to the Secretary of State at least 71 days before the general election. Minn. Stat. § 208.03.

24. After their certification, Minnesota law requires all Elector and Alternate Elector nominees to make the following pledge: "If selected for the position of elector, I

agree to serve and to mark my ballots for president and vice president for the nominees for those offices of the party that nominated me." Minn. Stat. § 208.43.

25. The final Electors and Alternate Electors are chosen by the State from the pool of nominees according to the results of the general election. Minn. Stat. §§ 208.02, 208.04. For instance, if the Presidential and Vice-Presidential candidates belonging to the Democratic-Farmer-Labor ("DFL") Party were to win the popular vote in Minnesota's general election, then Minnesota would appoint the Electors and Alternate Electors nominated by the DFL.

26. Pursuant to Federal law, the executive authority of Minnesota, like all other states, must submit a certificate of ascertainment stating the names of its appointed Electors to the Archivist of the United States as soon as practicable after the conclusion of their appointment. 3 U.S.C. § 6. In Minnesota, the Governor is the executive responsible for completing this task. Minn. Stat. § 208.44.

27. After an Elector appointed by the State of Minnesota submits his or her ballot, it is examined by the Secretary of State, and the Secretary will accept it as cast if it is consistent with the pledge quoted in Paragraph 24 of this Complaint. Minn. Stat. § 208.46(b).

28. Under Minnesota statute, the Secretary of State "may not accept and may not count either an elector's presidential or vice-presidential ballot if the elector has not marked both ballots or has market a ballot in violation of the elector's pledge." Minn. Stat. § 208.46(b).

6

29. Additionally under Minnesota statute, a duly-appointed Elector who "presents a ballot marked in violation of the elector's pledge . . . vacates the office of elector, creating a vacant position to be filled under section 208.45." Minn. Stat. § 208.46(c).

30. If the Secretary of State exercises Minn. Stat. § 208.46(c), the Secretary "shall appoint an individual as a substitute elector" in place of the duly-appointed Elector. Minn. Stat. § 208.45(b). If the purported substitute elector has not already taken a pledge quoted in Paragraph 24 of this Verified Complaint, he or she must make the following pledge: "I agree to serve and to mark my ballots for president and vice president consistent with the pledge of the individual to whose elector position I have succeeded." *Id.* § 208.45(c).

31. If any person casts a ballot as a substitute for a duly-appointed Elector, the Governor must submit an amended certificate of ascertainment stating the names on the final list of Minnesota's electors. Minn. Stat. § 208.44.

32. On August 11, 2016, the DFL nominated Muhammad Abdurrahman as an Elector. Consistent with state law, Mr. Abdurrahman made the pledge quoted in Paragraph 24 of this Complaint.

33. Hillary Clinton and Timothy Kaine won the popular vote for President and Vice-President, respectively, in Minnesota's general election on November 8, 2016. These candidates belonged to the national Democratic Party, of which the DFL party in Minnesota is affiliated.

34. Accordingly, consistent with the United States Constitution, Federal statutes, and Minnesota statutes, Minnesota appointed Mr. Abdurrahman as an Elector for the State of Minnesota on November 8, 2016, which was perfected on December 13, 2016 because Minnesota did not finally resolve any controversy or contest concerning his appointment by December 13, 2016.

35. Upon information and belief, prior to December 19, 2016, the date of meeting and vote of the Electors, Governor Dayton submitted a certificate of ascertainment naming Muhammad Abdurrahman as an appointed Elector of President and Vice-President to the Archivist of the United States pursuant to 3 U.S.C. § 6.

36. On December 19, 2016, Mr. Abdurrahman properly attended the meeting of Electors to give his vote for President and Vice President.

37. During the meeting, Mr. Abdurrahman took an oath to remain faithful to the United States and Minnesota Constitutions. Mr. Abdurrahman subsequently cast his ballot for Bernard Sanders for President and Tulsi Gabbard for Vice-President.

38. After Mr. Abdurrahman cast his ballot for Mr. Sanders and Ms. Gabbard, Secretary Simon did not accept or count Mr. Abdurrahman's ballot because neither were candidates selected by the DFL. Secretary Simon deemed Mr. Abdurrahman to have vacated his position as Elector by voting for a President and Vice-President inconsistent with his pledge.

39. Secretary Simon instead counted the ballot of Jill Garcia, an Alternate Elector, as a substitute for Mr. Abdurrahman. Minnesota did not appoint Ms. Garcia as an Elector before December 19, 2016.

40. At no point in time did Mr. Abdurrahman voluntarily vacate his position as Elector.

### COUNT I – 42 U.S.C. § 1983 INJUNCTIVE RELIEF
### (U.S. Const. Art. II, Amend. XII, and 3 U.S.C. § 5)

41. Plaintiff restates and realleges the foregoing as if fully set forth herein.

42. Article II of the United States Constitution, as modified by Amendment XII, vests the power to vote for President and Vice President of the United States only to Electors that are appointed by the several States.

43. Additionally, Amendment XII to the Constitution gives Electors sole power to count and certify their votes for President and Vice-President, as well as transmit them to the President of the Senate.

44. The State of Minnesota appointed Plaintiff Muhammad Abdurrahman as an Elector of President and Vice President on November 8, 2016 pursuant to 3 U.S.C. § 1 and Minn. Stat. §§ 208.02-05, 208.42.

45. Under 3 U.S.C. § 5, the executives of the State of Minnesota were required to resolve any contest or controversy concerning Mr. Abdurrahman's appointment by December 13, 2016. The State of Minnesota did not contest Mr. Abdurrahman's appointment before December 13, 2016 and thus did not resolve any contest or controversy by that same date.

46. Mr. Abdurrahman properly attended the meeting of Electors to cast his ballot for President and Vice-President on December 19, 2016.

47. Mr. Abdurrahman completed and submitted his ballots to Steve Simon, Secretary of State of Minnesota, during the meeting of Electors on December 19, 2016.

48. Mr. Abdurrahman's ballots were cast for Bernard Sanders for President and Tulsi Gabbard for Vice-President.

49. Under color of State law, Secretary Simon refused to accept Mr. Abdurrahman's ballots and votes, depriving him of his power to vote and to count, certify, and transmit his votes as an Elector in violation of Article II of the United States Constitution.

50. Additionally under color of State law, Secretary Simon deemed Mr. Abdurrahman to have vacated his office after he had already cast his vote, depriving him of his voting power as an Elector in violation of Article II of the United States Constitution and removing him from his position as an Elector on the day of his vote in violation of 3 U.S.C. § 5.

51. Instead of counting Mr. Abdurrahman's ballots, Secretary Simon counted the ballot of Jill Garcia, an Alternate Elector who was not appointed before December 19, 2016, again depriving Mr. Abdurrahman of his power to vote and to count, certify, and transmit his votes.

52. In addition to Secretary Simon, Governor Mark Dayton and Attorney General Lori Swanson are responsible for enforcing the laws of the State of Minnesota that deprived Mr. Abdurrahman of his rights and powers as an Elector under the Constitution and laws of the United States.

53. Accordingly, Mr. Abdurrahman seeks an order enjoining defendant executives of the State of Minnesota (1) to accept, count, certify, and transmit to Congress his Elector ballots for President and Vice-President of the United States, or allow Mr. Abdurrahman with his fellow Electors to count, certify, and transmit his votes to Congress; (2) from deeming his position to have been vacated before casting his ballot; and (3) from accepting, counting, certifying as valid, or transmitting to Congress the votes of Jill Garcia as an Alternate Elector.

## COUNT II – DECLARATORY RELIEF

54. Plaintiff restates and realleges the foregoing as if fully set forth herein.

55. Article II of the United States Constitution vests the power to vote for President and Vice-President of the United States only to Electors that are appointed by the several States.

56. Section 5 of Title 3 of the United States Code requires the states to resolve any contest or controversy concerning the appointment of Electors at least six days prior to their vote.

57. Minnesota Statutes § 208.43 requires Electors of President and Vice-President of the United States that were nominated by a political party to take an oath stating, "If selected for the position of elector, I agree to serve and to mark my ballots for president and vice president for the nominees for those offices of the party that nominated me."

58. Minnesota Statutes § 208.46 requires the Minnesota Secretary of State to count and record the ballots and votes of duly-appointed Electors during the meeting in which they vote for President and Vice-President of the United States.

59. Minnesota Statutes § 208.46(b) disallows the Minnesota Secretary of State from accepting or counting the ballots and votes of Electors that do not vote consistently with the pledge.

60. Minnesota Statutes § 208.46(d) provides that an Elector who marks his ballots in violation of the pledge vacates the office of elector.

61. The Uniform Faithful Presidential Electors Act, codified at Minn. Stat. §§ 208.40 *et seq.*, directly conflicts with Article II of the United States Constitution by requiring the Minnesota Secretary of State refuse to recognize, accept, or count votes and ballots of Electors who properly vote but do so inconsistently with their State-mandated pledge.

62. The Uniform Faithful Presidential Electors Act also directly conflicts with Article II of the United States Constitution by removing the ability of Electors to vote according to their choice and conscience, and imposing upon them the choice of the State or a political party.

63. The Uniform Faithful Presidential Electors Act directly conflicts with 3 U.S.C. § 5 by mandating removal of Electors that vote inconsistently with their pledge less than six days before their vote, and, indeed, after their vote has already taken place.

64. Plaintiff Muhammad Abdurrahman was appointed by the State of Minnesota to serve as Elector of President and Vice-President in calendar year 2016.

65. The Uniform Faithful Presidential Electors Act frustrates or precludes entirely Mr. Abdurrahman from fulfilling his duty as Elector and voting according to his choice and conscience under the United States Constitution.

66. Accordingly, Plaintiff seeks a judgment from the court declaring the Uniform Faithful Presidential Electors Act unconstitutional.

WHEREFORE, Plaintiff prays for the following relief:

1. For a Temporary Restraining Order and Temporary Injunction enjoining Defendants from transmitting the Certificate of Vote of the Electors to Congress so long as said Certificate does not reflect Plaintiff's votes for Bernard Sanders and Tulsi Gabbard, or any amended certificate of ascertainment of Electors that does not reflect Muhammad Abdurrahman as an appointed Elector, and until such time as the Court resolves Plaintiff's claims for permanent injunctive relief;

2. For a Writ of Injunction enjoining Defendants to accept, count, certify, and submit to Congress, or to allow Mr. Abdurrahman with his fellow Electors to count, certify and submit to Congress, Mr. Abdurrahman's ballots and votes for President and Vice President of the United States;

3. For a Writ of Injunction enjoining Defendants from accepting, counting, certifying, and submitting to Congress the ballots and votes of the Alternate Elector for Mr. Abdurrahman's position;

4. For Writ of Injunction enjoining Defendants from submitting to Congress any amended certificate of ascertainment of Electors that does not reflect Muhammad Abdurrahman as an appointed Elector;

5. For a Declaratory Judgment declaring the Uniform Faithful Presidential Electors Act, Minn. Stat. § 208.40, *et seq.* repugnant to the United States Constitution and of no force and effect;

6. Costs, disbursements, expenses, and reasonable attorneys' fees as allowed by law and 42 U.S.C. § 1988 and Minn. Stat. § 15.471, *et seq.*; and

7. Such other and further relief as the Court deems just and equitable.

ECKLAND & BLANDO LLP

Dated: December 19, 2016

/s/DANIEL J. CRAGG
Daniel J. Cragg, Esq. (#389888)
Vince C. Reuter, Esq. (#390874)
Jared M. Reams, Esq. (#397159)
800 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
(612) 236-0165
dcragg@ecklandblando.com
*Attorneys for Plaintiff*

## Verification

Muhammad Abdurrahman, being first duly sworn upon oath, deposes and states that he is the plaintiff in the above-captioned action and is familiar with the facts and circumstances of this case, and that he has read the foregoing Verified Complaint, and based upon his personal knowledge, known the facts stated therein to be true, unless such fact is stated upon information and belief, in which case he believes it to be true.

_____
Muhammad Abdurrahman

Subscribed and sworn to before me
this 19th day of December, 2016

_____
Notary Public

4832-6857-9134, v. 1

[Notary Seal: LEAH M. BIERMAIER, NOTARY PUBLIC - MINNESOTA, My Commission Expires January 31, 2019]